French et al. *v.* Snyder.

WILLIAM B. FRENCH, JOHN E. WYNNE, GEORGE H. CHRISTIAN, and GOWER WYNNE, Plaintiffs in Error, *v.* WILLIAM M. SNYDER, Defendant in Error.

ERROR TO EDGAR.

In determining the amount of property necessary to be levied upon to satisfy an execution, the officer should take into account the probable sacrifice to which it would be subjected at a public sale.

In an action against a sheriff for failing to collect an execution, it is no defense that the sheriff had reasonable grounds to believe, and did believe, that he had seized sufficient property. He should show, further, that he used such diligence as governs prudent men in the management of their own business. He should take property enough to allow for the probable depreciation of a public sale. And at the same time he should not make so excessive a levy as to bear on its face the appearance of oppression and unnecessary rigor.

In an action against a sheriff for failing to collect an execution, the damages are not necessarily the amount of the execution, but only such damages as the plaintiff shall actually suffer by the sheriff's neglect.

In an action against a sheriff for making an insufficient levy, to satisfy an execution, the opinion of witnesses as to the value of the property taken, should not be received. Under ordinary circumstances, the amount which the property brings at the sheriff's sale, is the best evidence as against him.

THE opinion of the Court contains a sufficient statement of the case.

Brief for Plaintiffs in Error.

The first error complained of by plaintiffs is, the admitting the testimony of Mills to go to the jury, fixing the value of property levied on and sold by the defendant as sheriff of Edgar county. This objection was well taken, and Mills' testimony should have been excluded from the jury. The sale at auction of articles levied on by a sheriff ordinarily furnishes a fair test of the value of the articles sold. A public sale ordinarily furnishes satisfactory proof of the value of the thing sold. *Waldo* v. *Gray*, 14 Ill. 184.

A levy on personal property of a debtor sufficient in value to pay the judgment, operates, while the levy is undisposed of, as a satisfaction of the debt. Such levy, however, is not a

absolute satisfaction of the judgment, but a satisfaction *sub modo*, only because, until a sale, it cannot be known with any degree of certainty, how much may be realized from the sale of the property. *Ambrose et al.* v. *Weed et al.*, 11 Ill. 490.

The second error complained of is, the giving the first instruction asked by the defendant. This instruction is wrong, in this: it makes the sheriff a judicial instead of a ministerial officer. Again, the evidence in the case fails to show any diligence on the part of the sheriff—hence it is well calculated to mislead the jury.

The third error complained of is, the refusing to give second instruction asked by plaintiffs. This instruction embraces and embodies the doctrine contained and urged against the admission of the evidence of the witness Mills—hence it must stand or fall with the decision of the court on that branch of the subject.

The fourth error is, that the verdict of the jury was contrary to the law, and not warranted by the evidence in the case. This brings up the question of due diligence on the part of the sheriff, and is perhaps the main question in the case. Diligence on the part of a ministerial officer, is a mixed question of law and evidence. The jury must determine the facts, whilst the court determines whether they constitute due diligence. *Whitset, Carter & Co.* v. *Slater*, 23 Ill. 626.

Scholfield & Eads, for Defendant in Error.

All the errors assigned relate substantially to the same question, viz.: By what rule shall the sheriff be governed as to the quantity and value of the property on which he is required to levy execution?

On the part of the defendant in error it is contended, that in determining what is a sufficient levy, the sheriff is left to exercise his own judgment, and is accountable to the plaintiff, on the one hand, if he fail to levy on as much as a reasonable, prudent man would deem sufficient for that purpose, and on the other, to the defendant, for an unreasonable and unnecessary levy on his property. *Lawson et al.* v. *The State, use,*

*etc.,* 5 English Rep. (Ark.) 28 ; *Commonwealth for Anderson* v. *Lightfoot,* 2 B. Monroe, 298.

The first instruction given on behalf of the defendant, is in accordance with the authorities above cited ; and the second instruction asked by the plaintiff and refused, violates the principle announced in said decisions.

If the law is as above claimed, then it must follow that it was competent to prove the value of the property on which the sheriff levied, and the objection to the testimony of Mills, (he being a witness for that purpose, and the objection to his testimony being general,) was properly overruled.

The amount due upon the execution at the time of the levy, inclusive of interest and costs, was $232.50, less a few days' interest, while the value of the property levied upon was $250, and justified the jury in the verdict which they rendered.

But as the jury were the exclusive judges of what amounted to a reasonable and prudent levy under the circumstances, the court will not disturb their verdict simply because they might have come to a different conclusion from the same evidence. *Sullivan* v. *Dollins,* 13 Ill. 85.

BREESE, J. This was an action on the case, brought by plaintiffs in error against defendant in error, at the June term, 1862, of the Edgar Circuit Court, for failing to make a sufficient levy on an execution in his hands as sheriff of Edgar county.

Plaintiffs allege, in their declaration, that at the March term, 1858, of the Edgar Circuit Court, they recovered a judgment against John Mills and Orson Q. Herrick, for the sum of one hundred and ninety-nine dollars and seventy cents damages, and six dollars and forty-five cents costs of suit.

That on the 6th day of February, 1860, plaintiffs caused a *pluries* execution to issue on this judgment, and placed the same in the hands of the defendant in error to execute, he being at the time sheriff of Edgar county.

Plaintiffs further charge, that at the time the defendant had the execution, Orson Q. Herrick, one of the defendants in

execution, was the owner of, and had in his possession, divers goods and chattels, within the county of Edgar, whereof the defendant might and ought to have levied the moneys indorsed on the execution, but the defendant, not regarding the duties of his office, failed to levy, etc., whereby plaintiff's debt was lost.

At the October term, 1862, of said Edgar Circuit Court, this cause came on to be heard, and was tried by a jury. Plaintiffs offered in evidence the record of their judgment against Mills and Herrick. Three several executions, the first bearing date May 6, 1858; the second bearing date February 3, 1859, both indorsed by the sheriff, "No property found;" and also the third, bearing date February 6, 1860, with return on back thereof, $71 made.

Plaintiffs also proved on the trial the shipping book of the Terre Haute, Alton & St. Louis Railroad Co., and that on the sixth day of February, 1860, the day on which said defendant in error received the last mentioned execution, Orson Q. Herrick, one of the defendants, was the owner of, and had in his possession, in the town of Kansas, in the county of Edgar, twenty-one horses, of the value of $1,500.

That on or about the said sixth day of February, the dendant came out to the town of Kansas, where Herrick, at the time resided, and where, at the time, most of the horses were kept; that whilst there, defendant in error and Herrick were together, came into witness's store, and Herrick took witness aside and asked him if he had a padlock, remarking at the time that Snyder (the defendant) was after his horses, and he wanted to lock his stable and prevent him from getting them—told Herrick he had no lock, and he then said he would see Snyder and manage the matter some other way. Herrick went to Snyder, and Snyder went home the same day, without making a levy on the horses. That about two days thereafter, on the morning of the 8th of the month, Herrick shipped all of the horses to St. Louis, Mo. Witness knew nothing of any arrangement between defendant in error and Herrick, but after Herrick had shipped his horses, heard Snyder (the defendant) say that Herrick had deceived him.

The defendant then introduced John Mills as a witness, and proposed to prove by him the value of the property levied on and sold by the defendant, to which the plaintiff objected; but the court overruled the objection, and permitted Mills to testify; all which was excepted to by the plaintiffs. The jury returned a verdict for the defendant.

The following instruction was asked of the court by the plaintiffs, which was refused : " The value of property levied on by a sheriff, or other officer, must be fixed by what it brings at the sale, and not what it may be considered worth at private sale."

The idea intended to be conveyed by this instruction, that in seizing property to satisfy an execution, the officer is not to determine its value by the price demanded for such property when sold privately by the owner, but should take into the account the probable extent of sacrifice to which it would be subjected at a public sale. The idea is a correct one, for we all know, as a general thing, property is often sacrificed at those forced sales, selling far below its acknowledged value. So when an officer makes a levy, he should bear this constantly in mind. This is in strict accordance with the decision of this court in the case of *Ambrose et al.* v. *Weed et al.*, 11 Ill. 490. It is there said, a levy is not an absolute satisfaction of the judgment, but a satisfaction *sub modo* only; because until there has been a sale, it cannot be known with any degree of certainty how much may be realized from the property. And in the case of *Waldo* v. *Gray*, 14 Ill. 184, it was said, a public sale ordinarily furnishes satisfactory proof of the value of the thing sold. This, then, should be impressed on the minds of the officers, that they should, in making a levy, bring the value of the property on which they are about to levy, to this test. This instruction should have been given.

It is complained, that the following instruction was given for the defendant, against the plaintiffs' objection: "If the jury believe, from the evidence, that the defendant at the time he made the levy of the execution offered in evidence in this case, had reasonable grounds to believe, and did believe, that

the property levied on by him was sufficient to satisfy said execution, then they will find for the defendant."

This instruction is open to several objections. There was no evidence on which to base it. No witness had said that any grounds whatever existed to induce a belief one way or the other; but the fatal objection is, that it relieves him of all responsibility, he having, in an action against him for neglect of duty, only to answer, I thought the property was of sufficient value to satisfy the execution. He must place himself in a position to be able to show, that he was governed by the rules which influence the conduct of discreet and prudent men in the management of their own affairs. He must take into his possession an amount of property sufficient when sold, in all reasonable probability, making a proper allowance for the sacrifice usually incident to forced sales, to bring a sum that will satisfy the execution and costs. At the same time, he must be careful not to make an excessive levy—so excessive as to bear on its face the appearance of oppression and unnecessary rigor, but on enough, even at that hazard, to make the money on the execution.

The proof, in this case, is very strong and very conclusive, that the defendant was grossly negligent of his duty, and justifies the suspicion that he was improperly influenced by the debtor in the writ. The influence is irresistible, that he knew of these horses, and knowing it, he had it in his power to have seized them. The debtor, perhaps, promised to pay the money, if he was permitted to take the horses to market, or may have promised to execute a delivery bond. Whatever the understanding might have been, he was "deceived," as he himself said, by the debtor. Such conduct as is here shown, is very culpable on the part of an officer, and should not pass without censure. The community is so much in the power of these officers—they are in a position to do so much wrong—so much depends on their fidelity, and their power is so absolute, they should be held to a reasonably strict accountability. It is almost impossible, from the facts proved, that the defendant was ignorant of the possession, by the execution debtor, of these horses. The defendant was in company with him at

his home, where the horses were stabled, and had the execution, and the debtor knew, as he told the witness, that he was then after the horses. It would be a great discredit to the demands of justice, if the defendant, under the circumstances shown, should be excused from levying the execution on valuable property, one-third of which would have made the money at a forced sale, and which was in his power, by showing a subsequent levy on remnants of drugs, old medical books, and such stuff, found in a doctor's shop, the real value of which might have been, to those of the profession who wanted them, equal in amount to the execution, but not of any particular value to the public generally, among whom they were to be sold.

The testimony of Mills, therefore, as to the value of those things was inadmissible, for the purpose of excusing or justifying the defendant. He acted at his peril, and was bound, at every reasonable hazard, to secure a sufficient amount of property.

The case of *Lawson et al.* v. *The State of Arkansas*, 5 Eng. 28, does not differ from the views here expressed, nor does that of *The Commonwealth* v. *Lightfoot*, 7 B. Monroe, 298, cited by defendant's counsel. We say, as in the case in 5th English, the defendant should have levied on property sufficient to satisfy the debt and costs, and in determining what is a sufficient levy, he is left to exercise his own judgment, free from the restraint or control of either the plaintiff or defendant; and is accountable to the plaintiff, on the one hand, if he fails to levy on as much as a reasonably prudent man would deem sufficient for that purpose : and, on the other, to the defendant for an unreasonable and unnecessary levy. This case nowhere asserts, that his judgment as to what is a sufficiency of property is to control. He is to exercise his judgment, but he is to take care he seizes as much as a prudent and reasonable man would deem sufficient.

The judgment, for the reasons given, must be reversed, and the cause remanded, with directions to award a new trial.

In advance of a second trial, it may be necessary to say something as to the measure of damages, in case of a verdict

for the plaintiffs. It is not averred in their declaration, that the debt has been lost by this negligence of the defendant, or that they are unable to collect it from the judgment debtors, or that it has not been paid by them, or some one of them.

We apprehend, that by the sheriff's failure to levy the execution on a sufficient amount of property, he does not thereby necessarily become liable to the full amount due on the judgment. Though the sheriff is bound faithfully and impartially to execute all process delivered to him, and for a failure the party sustaining an injury thereby, has a right to recover damages, commensurate only to the injury. This is not in all cases, as a matter of course, to be measured by the amount of the demand for which there has been a failure to execute process, for it may often happen that but inconsiderable damages have been sustained by the failure. The defendant in the execution, may be able, at the time of the sheriff's delinquency, to pay the debt, and continue so, and actually pay it soon after; the damage is not so great, nor should as much be recovered, as if by the delinquency of the sheriff, nothing thereafter could be made by execution.

By the rules of the common law, we apprehend, a failure in the sheriff to do his duty in levying an execution, does not necessarily make him liable to the plaintiff for the full amount thereof, but only liable for the actual damage sustained, to be manifested by the particular circumstances of each case. *Taylor* v. *Commonwealth*, 3 Bibb, 359; 7 B. Monroe, *supra.*

To meet these views, the plaintiffs in the court below will have leave to amend their declaration, should they deem it necessary.

*Judgment reversed.*