## WILLIAM H. MILLS

*v.*

## OSCAR LARRANCE.

*Opinion filed October 24, 1905.*

1. MALICE—*what tends to show malice in an excessive levy.* Proof that the property levied upon was of much greater value than the amount of the judgment and was levied upon at the express direction of the judgment creditor, who urged the officer to levy upon more, and that there was a bitter feeling between the judgment creditor and the judgment debtor, tends to show malice in making the levy.

2. SAME—*malice not implied merely because levy is excessive.* In view of the fact that the officer making the levy is liable to the judgment debtor in case he fails to levy upon enough available property to satisfy the judgment, malice will not be inferred merely because the jury may believe an unreasonable amount of property was levied upon.

3. APPEALS AND ERRORS—*Supreme Court does not deal with the preponderance of evidence in cases at law.* In cases at law coming through the Appellate Court the Supreme Court does not consider the question of the preponderance of the evidence.

4. SAME—*when erroneous instruction is not prejudicial.* An instruction in an action for damages for an excessive levy, stating, as an abstract rule of law, that a judgment creditor has a right to point out to the officer the goods he desires levied upon, but "at his own peril if he points out and directs a levy on an unreasonable and excessive amount," etc., is not prejudicial to the defendant, where another instruction negatives any presumption of malice and requires specific proof thereof.

5. PLEADING—*what allegation is not material—variance.* In an action for damages for an excessive levy, an allegation in the declaration that defendant's judgment was based upon an indebtedness evidenced by two promissory notes is not material, and a variance cannot be predicated thereon upon proof that one of the notes had merged in the other and that the judgment was upon one note only.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. JAMES W. CRAIG, Judge, presiding.

This was an action on the case by appellee, against appellant, in the circuit court of Vermilion county, to recover damages for an alleged excessive levy on personal property.

The original declaration contained three counts, but the second was dismissed and the case tried on the first and third. The first averred that on October 16, 1900, the plaintiff possessed personal property of the value of $3000, and was indebted to the defendant in the sum of $300.70 on two promissory notes; that the defendant, well knowing the premises, for the purpose of oppressing and wronging the plaintiff, on that day, by virtue of powers of attorney attached to said notes, without notice to plaintiff, procured judgment in the circuit court of Vermilion county against him for the sum of $1055, and in furtherance of said purpose placed an execution issued on such judgment in the hands of the sheriff of said county, and willfully and maliciously caused him to levy the same on all of said personal property, and to hold the same, by virtue of such levy, for a long time, to-wit, three months. The third count is sub-

stantially the same as the first, with the additional averment that the plaintiff was entitled to a credit of $700 on the two notes, and that the defendant willfully and maliciously procured a judgment to be entered in said circuit court upon said notes for the sum of $1055.

The defendant filed a plea of not guilty, and the case has been three times tried in the circuit court of Vermilion county before a jury, the first resulting in a verdict and judgment for the plaintiff for $4000, which, on appeal to the Appellate Court for the Third District, was reversed upon the ground that the damages assessed were excessive. (103 Ill. App. 356.) The second trial resulted in a verdict and judgment for the plaintiff for $3000, which was reversed by the Appellate Court. (111 Ill. App. 140.) The third trial resulted in a verdict for $4000 in favor of the plaintiff, but the presiding judge required the plaintiff to enter a *remittitur* of $2500, which being done, judgment was entered against the defendant for $1500 and costs of suit, which has been affirmed by the Appellate Court, and hence this further appeal.

D. D. EVANS, and WALDO CARL EVANS, for appellant.

R. W. FISK, S. M. CLARK, and BUCKINGHAM & DYSERT, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The usual motions to instruct the jury to find for the defendant were made upon the trial at the close of the plaintiff's evidence and at the close of all the evidence, both of which were overruled by the court.

In the brief of points submitted by counsel for appellant eleven grounds of reversal are suggested, several of which attempt to raise questions not cognizable in this court, such as that the damages are excessive and the insufficiency of the evidence to prove malice. The substantial errors of law relied upon in the argument are, that the trial court erred in

refusing to instruct the jury to find for the defendant, and in the admission of incompetent evidence, and in the giving and refusing of instructions. In fact, the first of the above named grounds of reversal seems to be the only one relied upon in the argument,—that is, that the evidence wholly failed to prove malice upon the part of the defendant in causing the alleged levy to be made, and therefore the jury should have been instructed to find for the defendant.

It may be conceded that malice is the gist of this action, and we have no fault to find with the definition of malice adopted by counsel, but we cannot agree with the contention that neither express nor implied malice is shown by the evidence in this record. There can be no serious controversy as to the excessiveness of the alleged levy. Whether the judgment is considered at $1055, as originally entered, or at $300.70, as subsequently reduced, the clear preponderance of the evidence is that the value of the property seized, such as horses, colts, cattle, corn, farm implements, etc., all of which was salable property, far exceeded in value either amount, and it was seized and held to satisfy the judgment. It is true the evidence is conflicting as to the participation of the defendant in causing the levy to be made, but it can not be denied that there is testimony, especially that of the deputy sheriff who made the levy, that the whole of the property was seized by defendant's direct and express orders, which were to levy upon everything loose,—the whole of the property,—and that he said, "Levy on all that stuff," and that the deputy sheriff, in obedience to such instructions, did make the levy; also that the defendant even urged the deputy to levy upon additional property belonging to the other defendant in the judgment, which he refused to do. The evidence also clearly shows that there was a bitterness of feeling between the parties, and the evidence in this record cannot be read without reaching the conclusion that the jury were fully justified in concluding that the levy upon all the personal property of the plaintiff was not prompted by

an honest purpose to enforce the collection of defendant's judgment, but to harass and oppress his debtor.

Learned counsel say malice should not be imputed to the appellant in consequence of the levy of the execution, for the reason it is not shown, *by a preponderance of the evidence,* that he intentionally or wantonly participated in the act or knowingly approved it after its commission. If we were permitted to deal with the question of the preponderance of the testimony we might possibly arrive at a different conclusion, but clearly that is not our province.

We think the court properly refused to take the case from the jury.

It is said in this connection that neither count of the declaration charges an excessive levy, but this position we do not think tenable.

It seems that the plaintiff offered in evidence the proceedings in the circuit court of Vermilion county upon which the judgment was obtained and on which the execution in question was issued, to which counsel for appellant say an objection was interposed and overruled. The proposition is that it was erroneous to put in evidence the entire proceeding in which the judgment of $1055 was reduced to $300.70. While we do not regard that proof a necessary part of the plaintiff's cause of action, we are unable to see how its introduction worked any injury to the defendant. It cannot be said that that proceeding was so foreign to the present cause of action as to render it impertinent, and therefore incompetent. We do not think there was any reversible error in the rulings of the court in admitting the testimony.

The second instruction given on behalf of the plaintiff is not, in our opinion, an accurate statement of the law. It does not purport to apply the rule there announced to this case, but is rather an attempt to state an abstract proposition of law, and tells the jury that a plaintiff has the right to control an execution in his favor and to point out to the officer the goods he desires levied on, "and if he does so point out

goods to the officer, he does it at his own peril if he points out and directs a levy on an unreasonable and excessive amount of such goods." The latter part of the instruction could only be justified as a statement of a rule of law applicable to this case upon the ground that malice could be implied from the directions to levy on an *unreasonable and excessive* amount of goods. The law makes it the duty of an officer holding an execution to levy the same upon a sufficient amount of property to satisfy the judgment, taking into consideration the fact that it may not sell for its full value at a forced sale, and if he fails to levy upon enough property to reasonably insure the satisfaction of the debt he is liable to the plaintiff in the execution for any loss thereby sustained. (*French* v. *Snyder,* 30 Ill. 339.) Therefore the question as to how much property ought to be levied upon in a given case is one to be determined from all the facts and circumstances, and what might be honestly considered by one party a reasonable amount might to others seem unreasonable and excessive, so that malice cannot be implied from the mere fact that a jury might consider the amount unreasonable and excessive. The most, however, that can be said of this instruction is, that, standing alone, it was calculated to mislead the jury to the prejudice of the defendant. Turning to those given on behalf of the defendant, we find that the jury were most explicitly and positively instructed that malice must be proved. Among others we note the following:

"Malice is the gist of this action, but there is no presumption that the defendant acted maliciously because the plaintiff has so charged in the declaration, but before the plaintiff is entitled to recover he must prove, by the preponderance of the evidence, that the defendant acted maliciously,—that is, malignantly, with deliberate intention to injure."

In the light of this language it cannot, we think, be fairly said that the jury were misled by the second instruction given at the instance of the plaintiff. The case is not

one in which direct and positively conflicting rules of law are announced, so that it cannot be known which of the two the jury followed.

The contention that the court erred in refusing to give certain instructions is mainly based upon the theory that there is a variance between the allegation of the declaration and the proofs, and it is contended that the question of variance was here properly raised by the instructions refused. Conceding that the alleged variance was sufficiently pointed out in the refused instructions, we are unable to agree with counsel that there was a material variance. The contention seems to be, that inasmuch as both counts of the declaration aver that the plaintiff was indebted to the defendant on *two* promissory notes and the proof showed that one had been merged in the other, there is a fatal variance, because in such case the plaintiff was not indebted on two notes, but only on one. We do not regard the allegation as to the cause of action upon which judgment was obtained and upon which the execution was issued as constituting the plaintiff's cause of action, and the statement that the indebtedness was upon *two notes instead of one was not a material allegation.*

Complaint is made of the refusal of other instructions, but we are satisfied that every substantial right of the defendant, under the law and the evidence, was protected by those which were given.

It is also said that one of the attorneys for the plaintiff made prejudicial remarks to the jury. The court sustained the defendant's objection to the remarks, which was all it was asked to do.

Treating all the controverted facts in the case as being conclusively settled by the decision of the Appellate Court, as we must, and confining our investigation to the alleged errors of law only, we are satisfied that no reversible error has been shown, and the judgment of the Appellate Court must therefore be affirmed.        *Judgment affirmed.*