ALBERT SCHAFFNER, Admr., Defendant in Error, *vs.* THE
C. F. MASSEY COMPANY, Plaintiff in Error.

*Opinion filed October 27, 1915—Rehearing denied Dec. 10, 1915.*

1. NEGLIGENCE—*when contributory negligence should not be imputed to servant in obeying master's order.* Where a servant undertakes a dangerous task at the order of the master without knowing of the danger, contributory negligence should not be imputed to him unless the danger was so obvious and patent that no person of ordinary prudence would have undertaken the task.

2. SAME—*what knowledge of dangerous paint is necessary to charge contributory negligence in its use.* The mere fact that a servant knows that fumes are given off by a certain paint will not charge him with contributory negligence or with having assumed the risk in using the paint, unless he knows also, or by the exercise of ordinary care and prudence should have known, the poisonous and dangerous nature of the fumes.

3. SAME—*direct and positive testimony is not needed to show due care.* The exercise of due care by the deceased for his own safety need not be established by the direct and positive testimony of the plaintiff but may be inferred from all the facts and circumstances shown to exist prior to and at the time of the injury.

4. SAME—*when there is no question of assumed risk.* Where the evidence shows the deceased servant had never before done any work of the kind in which he was engaged when he met his death and that he was not warned of the danger incident to and to be incurred in doing such work there is no question of assumed risk in the case, and instructions on that question may be properly refused.

5. MASTER AND SERVANT—*duty of master to warn of latent danger.* A servant working under the specific directions of the master has a right to assume that he will not be exposed to latent and unusual perils without warning, and has a right, in the absence of warning or notice, to rest upon the implied assurance that there is no danger.

6. SAME—*when master is liable although servant knew something of danger.* Although the servant has some knowledge of attendant danger, the master will be liable if, in obeying the order, the servant acts with the degree of prudence which an ordinarily prudent man would exercise under the circumstances.

7. SAME—*the master cannot plead ignorance as to character of materials used.* The master cannot screen himself from liability by the lack of knowledge of the danger in using materials and appliances furnished by himself for his business, and the law will

imply notice of any defects which by the exercise of ordinary care might have been discovered and become known to the master.

8. DAMAGES—*proper instruction as to damages for wrongful death when evidence shows where deceased's earnings went.* An instruction authorizing the jury, in assessing damages for wrongful death, to "take into consideration whatever you may believe, from the evidence, the next of kin might have reasonably expected, in a pecuniary way, from the continued life of the intestate," does not authorize considering the claims of brothers and sisters and collateral heirs, where the only evidence upon the question was that the deceased had always given his earnings to his mother.

9. APPEALS AND ERRORS—*how far court may go in admonishing witnesses.* It is only when the remarks of the trial court in admonishing witnesses to answer questions put to them by counsel are unnecessarily severe and such as to cause prejudice in the minds of the jurors that they constitute ground for reversal of the judgment.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding.

HOLT, CUTTING & SIDLEY, for plaintiff in error.

FRANCIS X. BUSCH, and JAROLD SVOBODA, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Defendant in error, Albert Schaffner, administrator of the estate of Frank Kosatka, deceased, brought suit in the circuit court of Cook county against plaintiff in error, the C. F. Massey Company, to recover damages for negligently causing the death of Kosatka while in its employ.

The declaration consisted of three counts. Each count charged that plaintiff in error furnished the deceased with a certain paint with which to paint the inside of certain battery wells, which it knew, or in the exercise of ordinary care should have known, contained substances that gave off poisonous gases dangerous to life if confined in a narrow space

without outside air, and that the deceased did not know of or appreciate the danger to which he was thus exposed in working in battery wells with such paint. The specific negligence charged in the first count was in directing the deceased to paint the insides of battery wells with such paint, where the fumes would be confined without fresh air; in the second count, the failure to warn the deceased of the poisonous nature of the gas given off by the paint and the danger of being poisoned by the fumes from the same; and in the third count, the failure to make reasonable rules and regulations to protect the deceased after sending him into the battery well, and such rules and regulations as would enable him to notify a person on the outside of his condition in case he should be overcome by the fumes from such paint. A plea of general issue was filed to the declaration and the cause proceeded to trial before a jury, resulting in a verdict and judgment for defendant in error for $5000. On appeal to the Appellate Court for the First District the judgment of the circuit court was affirmed. A writ of *certiorari* was allowed by this court, and the record is now in this court pursuant to the mandate of such writ.

The grounds urged for a reversal of the judgment are, a lack of proof that the deceased was in the exercise of due care for his own safety at the time of his injury, the giving of improper instructions and the refusal to give proper instructions, and improper remarks made by the court in the course of the trial.

Plaintiff in error is engaged in the manufacture of concrete battery wells used in the signal service of railroads. These wells are cylindrical in form and resemble a large milk bottle in shape. They are about four feet ten inches in diameter, with perpendicular walls five feet five inches high. Extending on above this is a shoulder about ten inches in height, which tapers inward, and still above this is the neck of the well, eighteen inches in height. The opening in the top is from twenty-eight to thirty inches in diameter. There

270 — 14

is another opening, two and one-half inches in diameter, in the side of the neck, extending downward into the well, through which the electric wires will pass into the well. The tops of the wells were enclosed with hinged covers made of wood and covered with galvanized iron. The wells are lined with asphaltum felt. The insides were not painted except for but one company, the Pennsylvania Railroad Company, which required the bottoms to be painted with asphaltum paint,—a black paint commonly used in painting iron work, such as bridges, fire-escapes, etc. The base of the paint is gilsonite, a mineral substance, and was purchased by the barrel, and was so thick that it had to be thinned down with gasoline or benzine before using. The evidence shows that a paint such as this gives off fumes, which, when used in a receptacle such as a battery well, where the fumes are confined and not allowed to mix with fresh air, are poisonous and dangerous to human life. The deceased was between eighteen and nineteen years of age and had been employed by plaintiff in error on two different occasions. His last employment was during the four or five months immediately preceding his death. During this time his work had consisted in putting covers on the battery boxes and painting the same. Up to the time he went into the battery well in question he had never painted on the inside of any of the wells or been warned of the danger of being overcome by the fumes of the paint in using it on the inside of battery wells, where the fumes given off would be confined in a narrow space without fresh air. On the afternoon of August 11, 1912, the deceased, while working as a painter in the shop of plaintiff in error, went into one of these wells by means of a ladder and proceeded to paint the inside of the well. Whether or not he did so under specific orders of the foreman was a disputed question of fact on the trial. The proof, however, on this question is clear that he did have some talk with the foreman about painting the inside of the battery well, and that he thereafter went to the paint bar-

rel, filled a can with paint, mixed with it some gasoline and walked to the battery well, where he was last seen alive with his hand on a ladder leaning against the well. About seven o'clock the next morning he was found dead in this well. The entire walls of the well had recently been painted and the empty pail and brush lay overturned at the bottom of the well. The bottom of the well had not been painted. It is not disputed that death was from asphyxiation, caused by the gasoline fumes given off by the paint, or that the deceased was not warned of the poisonous nature of the fumes given off by such paint when confined in a narrow space such as a battery well.

The question as to whether or not the deceased was ordered to go into the well, and the character of such order, was a controverted question of fact on the trial, which is settled against the contention of plaintiff in error by the verdict of the jury and the judgment of the Appellate Court affirming the judgment of the trial court. (*Mills* v. *Larrance,* 217 Ill. 446; *Deel* v. *Heiligenstein,* 244 id. 239; *Bullis* v. *City of Chicago,* 235 id. 472; *Dukeman* v. *Cleveland, Cincinnati, Chicago and St. Louis Railroad Co.* 237 id. 104; *Tebow* v. *Wiggins Ferry Co.* 241 id. 582.) Therefore, so far as this question is concerned, it must be assumed that in going into the well the deceased did so under the orders of the plaintiff in error.

It is insisted that the evidence fails to show that the deceased was in the exercise of due care for his own safety at the time he was killed. . This contention is based upon the facts that no one saw him after he went into the battery well and that there was testimony tending to show that only the bottom of the well was to be painted, which required but a few minutes, and that in painting the sides of the well the deceased did what he was not directed to do, and remained in the well a much longer time than was necessary or was contemplated by his superiors in performing the work it was intended he should do. From this it is

argued the deceased was guilty of contributory negligence of such a character as to bar the cause of action for his death. There is a conflict in the evidence as to whether or not the bottoms and sides of the wells or only the bottoms were usually painted, and also as to the nature of the order given to the deceased. The determination of this question was for the jury. Their decision of it is not open for review in this court. (*Chicago City Railway Co.* v. *McDonough,* 221 Ill. 69.) There is also evidence tending to show that it would take anywhere from eleven to thirty minutes to paint the bottom of a well, and that if the sides were also painted it would necessarily take a much longer time, and that the harmful effects of such fumes might be felt in a very few minutes by one working in such an enclosed space, the length of such time depending to a large extent upon the thickness of the paint mixture being used. The thinner the mixture the more gasoline would be used and the amount of gas given off in painting a given space would be greater. If the jury believed the sides as well as the bottoms of the wells were frequently painted, and that the deceased was directed by the foreman to paint the "inside of the well," as he attempted to do, (and the evidence on the part of the defendant in error fully warranted them in so believing,) they were clearly right in finding that contributory negligence could not be imputed to deceased for attempting to execute such order, unless the danger was so obvious and patent that no person of ordinary prudence would have undertaken the work. (*Western Stone Co.* v. *Muscial,* 196 Ill. 382; *Hartrich* v. *Hawes,* 202 id. 334.) The evidence further shows the deceased had no experience in painting the insides of the wells and was not warned of the danger to which he would be exposed in so doing, and as his previous use of this paint had always been in the open air, where the fumes were not confined or their harmful effects felt, it may well be assumed that his previous experience with it was such as to lead him to believe, even

had he noticed the fumes were stronger while painting the inside of the well, that they were not such as to render them dangerous to life or injurious to his health. The deceased is not chargeable with contributory negligence or with having assumed the risk merely because he knew that fumes were given off by the paint, unless he also knew, or by the exercise of ordinary care and prudence should have known, the poisonous and dangerous nature of such fumes. (*Hartrich* v. *Hawes, supra.*) In this case the danger to which the deceased was thus exposed was not open and obvious and one of which he was aware. It was latent and one of which he was not warned. He was working under the specific directions of his master, and had a right to assume that he would not be exposed to unusual perils without warning, and had a right to rest upon the implied assurance, in the absence of warning, that there was no danger. *Chicago Edison Co.* v. *Moren,* 185 Ill. 571; *Hartrich* v. *Hawes, supra.*

In *Illinois Steel Co.* v. *Schymanowski,* 162 Ill. 447, the rule as to the master's liability under such circumstances is well stated, as follows (p. 459) : "In the next place, a master is liable to a servant when he orders the latter to perform a dangerous work, unless the danger is so imminent that no man of ordinary prudence would incur it. Even if the servant has some knowledge of attendant danger, his right of recovery will not be defeated, if, in obeying the order, he acts with the degree of prudence which an ordinarily prudent man would exercise under the circumstances. When the master orders the servant to perform his work, the latter has a right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary perils. The servant has a right to rest upon the assurance that there is no danger, which is implied by such an order. The master and servant are not altogether upon a footing of equality. The primary duty of the latter is obedience, and he cannot be charged with negligence in obey-

ing an order of the master unless he acts recklessly in so obeying. Whether he acted thus recklessly in obeying his master's order, or whether he acted as a reasonably prudent person should act, are questions of fact to be determined by the jury. (*Anderson Pressed Brick Co.* v. *Sobkowiak,* 148 Ill. 573; *National Syrup Co.* v. *Carlson,* 155 id. 210; *Keegan* v. *Kavanaugh,* 62 Mo. 230; *Aldridge* v. *Midland Blast Furnace Co.* 78 id. 565; *Ferren* v. *Old Colony Railroad Co.* 143 Mass. 197; *City of Lebanon* v. *McCoy,* 40 N. E. Rep. 700; *B. & O. C. R. Co.* v. *Leathers,* 40 id. 1094; *Lee* v. *Woolsey,* 109 Pa. St. 124; *Mulcaines* v. *City of Janesville,* 67 Wis. 24; *Kranz* v. *Railroad Co.* 123 N. Y. 1.) These questions of fact are settled in this case by the judgment of the Appellate Court affirming that of the trial court." The same situation is presented in the case at bar.

As to the question of proving that the deceased was in the exercise of due care for his own safety at the time of the accident, there were no eye-witnesses as to what he did after entering the battery well and no direct evidence as to his conduct in this respect, and no one knows what he actually did after entering the well except that he painted it on the inside. So far as the mechanical means were concerned, he had placed the ladder so he could not only use it as a means of entering the well, but also so that he could use it for the purpose of emerging from the well when he had finished his work. So far as his conduct is known,— and what he did is open and visible,—he must be said to have exercised due care for his own safety. While the burden of proving the deceased was in the exercise of due care for his own safety was on the defendant in error, that fact need not be established by direct and positive testimony, but may be inferred from all the facts and circumstances shown to exist prior to and at the time of the injury. On the evidence in this record we cannot say that due care on the part of the deceased for his own safety was not sufficiently proved.

It is further insisted that the deceased assumed the risk to which he was exposed, and that the court erred in refusing to give the 23d, 25th and 26th instructions,—the only instructions tendered by plaintiff in error on the question of assumed risk. The evidence shows the deceased had never done any of this kind of work before, and that he was not warned of the danger incident to and to be incurred in doing such work. There was evidence tending to show that the deceased was working pursuant to the special orders of the master, and unless it can be said (which we deem it cannot be in this case) that in so doing he acted as no reasonably prudent person would have acted under like circumstances, he cannot be said to have assumed the risk involved in carrying out, or attempting to carry out, such order of the master. There was therefore no question of assumed risk in the case, and the instructions on that question were properly refused. *Jacobsen* v. *Heywood Rattan Co.* 236 Ill. 570; *Postal Telegraph Co.* v. *Likes,* 225 id. 249; *Knox* v. *American Rolling Mill Corp.* 236 id. 437.

The contention that plaintiff in error was free from negligence because its general manager and foreman testified that he did not know that the use of such paint on the inside of the battery wells was dangerous is without force. The evidence shows that the fumes given off by it when confined in a narrow space such as a battery well are dangerous to human life; that the plaintiff in error had been using this paint for this purpose for several years, and that others had been affected by the fumes from the paint. Its dangerous character, when so used, could easily have been discovered by plaintiff in error had it taken the pains to investigate the subject. It was the duty of plaintiff in error to know, if by the exercise of due care it could have known, the dangers to which its servants were or would be exposed in using the materials and appliances furnished by it for their use. As to such matters the master cannot screen himself from liability by the lack of knowledge of

the danger in using such materials if by the exercise of due care the danger might have been discovered and become known to him. Under such circumstances the law will imply notice of any defects which by the use of ordinary care might have been discovered and become known to the master. *Whitney & Starrette Co.* v. *O'Rourke,* 172 Ill. 177; *Metcalf Co.* v. *Nysted,* 203 id. 333; *Missouri Malleable Iron Co.* v. *Dillon,* 206 id. 145.

The refusal of instruction No. 27 offered by plaintiff in error is complained of. This instruction informed the jury that in order to recover the plaintiff must prove his case by a preponderance or greater weight of evidence, and if the evidence for the defendant was more convincing than the evidence for the plaintiff, or if the evidence was equally balanced, or if from the evidence the jury were unable to say which side has offered the more convincing evidence, they should find defendant not guilty. Instruction No. 1 which was given directed the jury that the plaintiff must prove his case by a preponderance of the evidence, and informed them of what the preponderance of evidence consisted. Given instruction No. 10 also instructed the jury as to what was meant by preponderance of the evidence. We think the subject matter of the refused instruction was sufficiently covered by other given instructions, so it was not error to refuse it. *Johnson* v. *Royal Neighbors,* 253 Ill. 570.

It is further insisted that the court erred in giving the plaintiff's third instruction, which was as follows:

"If you find the defendant guilty under the evidence and the instructions of the court, then it is your duty to assess the plaintiff's damages, and in assessing the damages you have a right to take into consideration all of the testimony, and that only, bearing upon that question, and allow such damages, if any, as you may deem a fair and just compensation with reference to the pecuniary injuries resulting from the death of the plaintiff's intestate to his

next of kin; and in estimating the plaintiff's damages you
have a right to take into consideration whatever you may
believe, from the evidence, the next of kin might have rea-
sonably expected, in a pecuniary way, from the continued
life of the intestate."

It is claimed that the instruction authorized the jury,
in fixing the damages, to consider not only what the par-
ents of the deceased might reasonably have expected had
he lived, but also what his adult brothers and sisters might
have expected, or to find substantial damages for the col-
lateral heirs, who were only entitled to nominal damages.
We do not so regard the instruction.  By its language the
jury are expressly limited in fixing the amount of damages,
if any, to that amount, only, which the jury believed the
evidence showed the next of kin might reasonably have
expected in a pecuniary way.  The only evidence upon this
question was that he had always given his earnings to his
mother.  The instruction was proper under the holding of
this court in *City of Chicago* v. *Keefe,* 114 Ill. 222, *Balti-
more and Ohio Southwestern Railway Co.* v. *Then,* 159 id.
535, and other cases.

It is further insisted that the cause should be reversed
because of improper conduct of the court and counsel in
the trial of the case.  We have read the record with respect
to the matters complained of, and while it appears that
during the progress of the trial the court, for the purpose,
apparently, of expediting the trial, was unnecessarily abrupt
in admonishing counsel and certain witnesses, we do not
think the remarks complained of were of such a character
as to require a reversal of the judgment on those grounds.
A witness was asked a hypothetical question, and it devel-
oped on cross-examination that the witness had based his
answer on what he had actually observed at the plant of
plaintiff in error instead of the conditions assumed in the
hypothetical question.  The court struck his answer, but

later allowed the witness to change his testimony when he stated his answer was not based on what he had observed.

While there is some warrant for the contention that the conduct of the court during the trial might be construed as indicating hostility toward certain of plaintiff in error's witnesses, still, when all of the circumstances are considered under which the remarks were made, we think they were not so understood by the jury nor was the cause of plaintiff in error prejudiced thereby. Other remarks complained of were made in chambers, out of the hearing of the jury, and, of course, could not have had any such effect. The trial court in the matter of the conduct of the trial must necessarily be allowed a wide discretion in admonishing witnesses to answer the questions put to them and in compelling obedience to its rulings made during the course of the trial. It is only when the remarks of the trial court of that character are unnecessarily severe and such as are liable to cause prejudice in the minds of the jury that they constitute ground for a reversal of the judgment in this court. We think the remarks of the court in question were not of such a character.

Finding no reversible error in the record the judgments of the circuit and Appellate Courts will be affirmed.

*Judgment affirmed.*