2005 WY 29

**KES, f/k/a KET, Appellant (Plaintiff),**

v.

**CAT, Appellee (Defendant).**

No. 04–39.

Supreme Court of Wyoming.

March 10, 2005.

781

Representing Appellant: Douglas W. Weaver, Wheatland, Wyoming.

Representing Appellee: James A. Hardee, Douglas, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and STEBNER, D.J.(Ret.).

VOIGT, Justice.

[¶ 1] After about seventeen years of marriage, Mother and Father divorced. Mother was awarded custody of the parties' only child (the Child), who was almost eight years old. A year later, because Mother was suffering from psychological problems, Mother and Father agreed that Father would take temporary custody of the Child. The Child remained with Father until Father was called into active military duty, at which time the Child returned to Mother subject to stringent mental health care and monitoring requirements. When Father returned from active duty, a custody hearing was held. The district court modified the original decree and granted custody to Father. Mother appeals from that order. We affirm in part and reverse in part.

## ISSUES

[¶ 2] Both Mother and Father present the following two issues for our review:

1. Did Father meet his burden of showing a material change in circumstances?

2. Did the trial court abuse its discretion in changing custody of the Child to Father?

## FACTS

[¶ 3] Mother and Father divorced in March 2000 and Mother was awarded custody of the Child. After the divorce, Mother began to experience psychological problems, which, by her own admission, rendered her incapable of adequately caring for the Child. Mother and Father jointly petitioned for a temporary change of custody, which petition the district court granted in April 2001.

[¶ 4] Soon after the order granting temporary custody to Father was entered, Mother went to her parents' home in Oklahoma to seek medical attention. There she was diagnosed with bipolar disorder, ordered to undergo counseling, and prescribed medication. Mother then moved to Kansas where she began living with a friend, who supported her while she was ill.

[¶ 5] In March 2002, while she was living in Kansas, Mother filed a petition to regain custody of the Child. Before this petition could be heard, however, Father was called into active duty with the National Guard. An abbreviated hearing was held, after which the district court granted Mother custody of the Child while Father was on active duty, but ordered that the Child be returned to Father upon his return. The order also contained a number of conditions relating to Mother's mental and physical health that she would be required to observe while the Child was in her custody.

[¶ 6] Mother and the Child stayed in Kansas until December 2002, when they moved back to Oklahoma. Mother reported that she returned to Oklahoma to help care for an ailing grandmother, and to be close to C.S., whom she married in January 2003. Father returned from military service and on August 22, 2003, a custody hearing was held. Prior to any testimony, Father requested by oral motion that the district court judge speak with the Child alone in chambers. Mother objected, claiming that the Child was not competent to testify and that Father had not allowed her to see the Child the day before the hearing. The judge granted Father's motion and conducted a private interview with the Child, in which interview the Child expressed a desire to remain in Father's custody.

[¶ 7] The district court ultimately awarded Father custody. The decision letter noted that while the evidence presented indicated that Mother was currently capable of provid-

ing adequate care for the Child, the district court was concerned with Mother's "downplaying of the significance of her prior mental condition." The other factor cited in support of Father's custodial award was the Child's stated preference to remain in Father's custody.

[¶ 8] Mother filed a timely appeal.

## STANDARD OF REVIEW

[¶ 9] We review custody modification proceedings as follows:

It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. *Scherer* [*v. Scherer*], 931 P.2d [251,] 254 [(Wyo.1997)]; *Rowan v. Rowan*, 786 P.2d 886, 890 (Wyo.1990); see also *Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo.1995) and *Fink v. Fink*, 685 P.2d 34, 36 (Wyo.1984). The determination of the best interests of the child is a question for the trier of fact. "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Fink*, 685 P.2d at 36.

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther*, 888 P.2d 1250, 1252 (Wyo.1995) (quoting *Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo.1993)). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs* [*v. Triggs*], 920 P.2d [653,] 657 [(Wyo.1996)]; *Cranston v. Cranston*, 879 P.2d 345, 351 (Wyo.1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones*, 858 P.2d 289, 291 (Wyo. 1993). Similarly, an abuse of discretion is present " 'when a material factor deserving significant weight is ignored.' " *Triggs*, 920 P.2d at 657 (quoting *Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo.1993)).

*Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo. 1998).

## DISCUSSION

### Change in Circumstances

[¶ 10] In order to obtain modification of the divorce decree, Father bore the burden of demonstrating that: (1) a material change in circumstances affecting the Child's welfare had occurred since the entry of the initial decree, and that (2) modification was in the Child's best interests. *Clark v. Alexander*, 953 P.2d 145, 150 (Wyo.1998); *Wilcox-Elliott v. Wilcox*, 924 P.2d 419, 421 (Wyo. 1996), *overruled on other grounds by Clark v. Alexander*, 953 P.2d 145 (Wyo.1998); Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2003). With respect to the change in circumstances, the district court stated: "[t]hus, this Court believes that the multiple changes in living circumstances in [the Child]'s life which have been caused by her parents has resulted in a substantial change in circumstance far beyond that which was contemplated by the [original] order."

[¶ 11] Mother asserts that "there are no factual findings, and in fact no evidence that these 'multiple changes in living circumstances in [the Child]'s life' have been sufficiently harmful to the minor child." Mother argues that in order to establish a substantial change in circumstances a party must prove harm to the child. Although many times a change in circumstances warranting modification of custody will arise as the result of some action or inaction by one parent that is harmful to the child, this is not the standard. Rather, the test is whether the change in circumstances "affects the child's welfare...." *JRS v. GMS*, 2004 WY 60, ¶ 10, 90 P.3d 718, 723 (Wyo.2004). No showing of harm to the child is required. For example, in *Thompson v. Thompson*, 824 P.2d 557, 559 (Wyo.1992), we upheld a finding of changed circumstance warranting modification of custody where the child had been properly cared for and neither parent had deteriorated in parenting abilities, but rather one parent had "surged far ahead in her personal development and ability to serve as a parent." *See also Jackson v. Jackson*, 2004 WY 99, 96 P.3d 21 (Wyo.2004).

[¶ 12]  Mother's position that a showing of harm or detriment to the child is required before a change in circumstances can be established is the only argument she makes on appeal with respect to that issue.  Because that is not the statutory standard, and because there was sufficient evidence of a material change in circumstances, we uphold the district court's finding that a material change in circumstances occurred.  That leaves us to examine whether the modification was in the Child's best interests.  The district court's decision letter indicated that the Child's stated custodial preference was a significant factor in its decision.  In fact, the Child's preference and Mother's minimizing of her mental condition were the only two factors cited in awarding custody to Father.  We will therefore turn to whether the evidence of that preference was properly obtained and considered.

### Private Interview with the Child

[¶ 13]  Mother claims that the district court abused its discretion when it conducted a private, in camera, interview with the Child over Mother's objection.  In support of this argument, Mother asserts that the district court did not adequately determine the Child's competency to testify, and that because the Child had been with Father for the two months prior to the hearing and Father did not allow the Child to see Mother the night before the hearing, the district court's decision to conduct the interview over Mother's objection was unreasonable.

[¶ 14]  We have long held that "the trial judge may interview a child to determine its preference as to living with either the mother or the father, provided that the child is of sufficient age to understand the effect of the expression of such preference, though an expression of such preference is not conclusive." *Douglas v. Sheffner,* 79 Wyo. 172, 331 P.2d 840, 844 (1958), *superseded on other grounds by In Interest of MKM,* 792 P.2d 1369 (Wyo.1990).  When a private interview occurs, the district court must "state in his decision the preference expressed by the child, if any, and further state as to whether or not and to what extent the statements of the child have

been taken into consideration in arriving at the decision." *Id.* at 845.  Whether obtained in open court or in camera, the child's expression of a preference must be considered. *Wilcox–Elliott,* 924 P.2d at 421.

[¶ 15]  With respect to the private interview in the present case, the district court's decision letter stated:

> The Court had the opportunity to speak with [the Child].  As noted hereinbefore, she appeared to be very bright and mature for an eleven year old.  Without hesitation, [the Child] expressed her desire to remain in the custody of her father in Wheatland.  This was based on her relationship with her father, stepmother, and stepsisters. [The Child] did, however, indicate that she loves her mother and likes [C.S.] very much.
>
> This Court believes that given [the Child's]'s level of maturity, her wishes should be given some deference.  [The Child] is the one who has been subjected to the numerous changes described above.  Her opinion as to which of those settings is the most stable, safe, and happiest for her is a unique perspective.  She is the only one who has had to undergo all of the changes of the last almost 3 years.

These statements indicate that the district court judge met with the Child, that the Child stated her preference to remain with Father, and that the preference was given "some deference."  While these statements comply with the requirements set out in *Douglas,* our analysis cannot end there.  In *Douglas,* 331 P.2d at 843, unlike here, both parties consented to the in camera interview.

[¶ 16]  In a custody case, when a parent objects to a private interview between the child and the judge, due process implications arise.  *Gennarini v. Gennarini,* 2 Conn.App. 132, 477 A.2d 674, 675 (1984).  A parent's right to associate with and rear his or her child has been recognized as a "liberty interest protected by the Fifth and Fourteenth Amendments to the Constitution of the United States, and . . . is found in Wyo. Const. art. 1, § 6, which provides, '[n]o person shall be deprived of life, liberty or property without due process of law.'" *Michael v. Hertzler,* 900 P.2d 1144, 1147 (Wyo.1995).

With respect to the interests at stake in a custody proceeding, one author stated:

In sum, custody litigation imperils parents' fundamental right to enjoy their children's companionship and to direct their children's upbringing. This peril is magnified by the difficulty of regaining physical custody once lost. The great weight of the parental liberty interest, together with the significant deprivation of that interest inherent in a loss of physical custody, entitles parents to custody procedures that meet the requisites of due process.

Cynthia Starnes, *Swords in the Hands of Babes: Rethinking Custody Interviews After Troxel*, 2003 Wis. L.Rev. 115, 149 (2003). In addition, we have stated that:

"One of the basic elements of due process is the right of each party to be apprised of all the evidence upon which an issue is to be decided, with the right to examine, explain or rebut such evidence. And, the right to hear and controvert all evidence upon which a factual adjudication is to be made includes the right to hear and cross-examine witnesses."

*Matter of SAJ*, 942 P.2d 407, 410 (Wyo.1997) (*quoting In Interest of BLM*, 902 P.2d 1288, 1291 (Wyo.1995)). When a judge interviews a child in private without the consent of a parent, that parent is deprived of due process inasmuch as he or she is unable to hear the evidence, and is not given an opportunity to explain or rebut statements made by the child.

[¶ 17]   In spite of the due process implications, in camera interviews are widely used as a means of discovering a child's custodial preference. *Lesauskis v. Lesauskis*, 111 Mich.App. 811, 314 N.W.2d 767, 768 (1981); Cynthia Starnes, *supra*, 2003 Wis. L.Rev. at 117.

The principle justifications advanced for the practice are the necessity of ascertaining the child's preferences and feelings to the trial court's very sensitive determination of custody and visitation, and the need to obtain that information in a way which will maximize the child's freedom of expression and avoid the trauma of requiring an expression of those preferences and feeling in the ordinary adversarial setting or in the presence of parents about whom the child is expressing them.

*Gennarini,* 477 A.2d at 676.

[¶ 18]   While these private interviews can be a valuable tool in assessing a child's best interests, they can also be problematic as they create tension between two social interests. S. Bernstein, Annotation, *Propriety of Court Conducting Private Interview with Child in Determining Custody,* 99 A.L.R.2d 954, 955 (1965).

On one side there is the fundamental principle of Anglo–Saxon law that the decision must be based on evidence produced in open court lest the guaranty of due process be infringed, while on the other there is the conviction of those trained in the social and medical sciences that the informal procedure of obtaining the infant's preference, outlook, and interest in the calm of the judge's chambers, away from the pressure of the parents, provides best for the welfare of the child and of society as a whole.

*Id.* (footnote omitted). Various procedures have been developed in an attempt to resolve this conflict. Barbara A. Atwood, *The Child's Voice in Custody Litigation: An Empirical Survey and Suggestions for Reform,* 45 Ariz. L.Rev. 629, 640–41 (2003).

A growing majority of states now require, either by statute or by judicial holding, that *in camera* conversations with children be recorded. In a few states, a record must be made only if a party requests it, but in other states the presence of a court reporter is mandatory and cannot be waived by the parties. Some states, moreover, require that parties' lawyers be allowed to attend the *in camera* interview. Within the group of states requiring a record, most require that the record be made available to the parties before a custody determination is rendered, recognizing that information obtained in the *in camera* interview may play a determinative role in a judge's custody ruling without any guarantee of its accuracy. In a few states, courts seal the record of the interview for appellate review in an effort to protect children's confidentiality while

still providing a basis for appellate scrutiny.... [A] substantial minority of states still affords judges discretion to interview children privately in chambers, without making any record whatsoever of the interview.

*Id.* at 643–44 (footnotes omitted). Numerous variations on these procedures have also been developed. *See Watermeier v. Watermeier,* 462 So.2d 1272, 1275 (La.App.1985) (attorneys allowed to attend the interview and ask questions during the competency examination; however, once child determined to be competent the attorneys may remain in the interview as observers only); *Molloy v. Molloy,* 247 Mich.App. 348, 637 N.W.2d 803, 810–11 (2001), *aff'd in part and vacated in part,* 466 Mich. 852, 643 N.W.2d 574 (2002) (record of private interview sealed for appellate review; however any information revealed in the interview exceeding the scope of the child's preference and affecting the custody decision must be disclosed to parents at the time of hearing); and *In re Michael C.,* 557 A.2d 1219, 1220 (R.I.1989) (transcript of private interview read to parents and their counsel who then were allowed to cross-examine child by submitting written questions which were then read to the child by the court).

[¶ 19] Wyoming's current procedure for private interviews between a judge and a child in a custody proceeding requires that the district court's decision letter reflect the child's preference and indicate how much weight was assigned to that preference. *Douglas,* 331 P.2d at 845. While this requirement provides some protection for parents' fundamental rights in the event of an appeal, it does nothing to protect their due process right to " 'be apprised of all the evidence upon which an issue is to be decided, with the right to examine, explain or rebut such evidence.' " *Matter of SAJ,* 942 P.2d at 410 (*quoting In Interest of BLM,* 902 P.2d at 1291). Under the current procedure, parents have no way of knowing the contents of the interview or of challenging the manner in which the interview was conducted or the reliability of the information revealed therein.

[¶ 20] In order to ameliorate this problem, we hold that if one or both parents object to a private interview between the child and judge in a custody proceeding, no such interview should take place.[1] Rather, the parties or the district court should fashion a suitable alternate procedure for obtaining evidence of the child's custody preference. In some instances, in-court testimony may be appropriate. An interview with the child in chambers, either with counsel present or recorded in some fashion, may also suffice. Additionally, a neutral third party may be appointed with the consent of the parties to speak with the child and to report to the court or to the parties. While any one of the above-mentioned procedures, if properly carried out, could be appropriate in particular circumstances, this list of examples is not intended to be exhaustive. Because each custody case involves unique parties and circumstances, the parties or the district court may fashion any procedure that effectively protects the parents' due process rights and minimizes the stress and trauma to the child. In doing so, the balance must weigh in favor of the child's best interests. Consequently, if the parties do not consent to a reasonable method of obtaining evidence of the child's preference, the court may conduct an interview in chambers, with counsel present, and with attention paid to the method most likely to preserve the parents' right to due process under the circumstances. Finally, in every instance where a child's preference is considered by the district court, the record should reflect the child's competency to testify, the child's stated custodial preference, and the weight given to that preference. *See Billingsley v. State,* 2003 WY 61, ¶¶ 10–11, 69 P.3d 390, 395 (Wyo.2003) and *Douglas,* 331 P.2d at 845.[2]

---

1. A parent's consent or failure to object to the interview acts as a waiver of his or her right to object. S. Bernstein, *supra,* 99 A.L.R.2d at 956 ("[w]here a private interview is held pursuant to the consent of the parties, either in fact or in law, the general rule is that any claimed error is waived and the interview cannot be used as the basis for subsequently attacking the custody award"); *see also Jones v. Jones,* 903 P.2d 545, 548 (Wyo.1995).

2. The extent of the competency finding in the instant case appears to be the statement in the

[¶ 21]   We conclude that, in the instant case, the district court abused its discretion by conducting a private interview with the Child over Mother's objection and without any safeguarding of Mother's due process rights.   We have said that where sufficient evidence exists to sustain a finding in a case tried by the court without a jury, admission of incompetent evidence is not a ground for reversal.   *Pinther v. Pinther,* 888 P.2d 1250, 1255 (Wyo.1995) (*quoting Herman v. Speed King Mfg. Co.,* 675 P.2d 1271, 1279 (Wyo.1984)).   However, because a child's unequivocally stated preference is a factor that the district court must consider when deciding a child's best interests, we cannot simply ignore evidence of that preference as we review whether the district court properly made its determination.   *Love v. Love,* 851 P.2d 1283, 1291 (Wyo.1993) (district court abused its discretion by not acknowledging and giving weight to child's stated wishes).   That is especially true where, as here, the district court specifically relied upon that preference.

## CONCLUSION

[¶ 22]   Mother's post-divorce psychological problems, coupled with the temporary custody arrangements necessitated by Father's active duty assignments, constituted a material change in circumstances that affected the Child's welfare.   Consequently, we affirm the district court's finding in that regard.   The decision to change custody, however, was an abuse of discretion because the district court relied upon an improper in camera interview with the Child in determining the Child's custody preference.

[¶ 23]   We affirm the order of the district court finding a material change in circumstances, but we reverse the order changing custody of the Child to Father, and remand to the district court for further proceedings consistent with this opinion.

decision letter that "[the Child] appeared to be very bright and mature for an eleven year old."

We caution that such is not a sufficient application of the *Billingsley* test.