2011 WY 12

**Maralee A. HOLIDAY, Appellant (Defendant),**

v.

**Craig D. HOLIDAY, Appellee (Plaintiff).**

No. S–10–0160.

Supreme Court of Wyoming.

Jan. 31, 2011.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶1] In this divorce action, the district court awarded Father primary custody of the parties' four children. Mother appeals claiming the district court abused its discretion in declining to interview the oldest son about his preference to live with her and prohibiting Father's sister from testifying as to her opinion about which parent should have custody. We conclude the district court erred in not considering the oldest son's preference and reverse.

## ISSUES

[¶2] Mother states the issues for this Court's determination as follows:

A. The district court erred when it did not allow CBH to express his preferences regarding physical custody:

    i. Minor child's expression for custodial preference must be allowed;

    ii. The district court's interpretation of *KES v. CAT*, 2005 WY 29, 107 P.3d 779 (Wyo.2005) prevented the minor child from expressing his custodial preferences and prejudiced the Defendant.

B. The district court erred when it would not allow Dawn Blanchard to give her opinion on the issue of who should have physical custody of the minor children.

Father asserts the district court did not abuse its discretion in declining to interview the oldest son, declining to allow Ms. Blanchard to express her opinion about physical custody or awarding him custody of the children.

## FACTS

[¶3] Maralee A. Holiday (Mother) and Craig D. Holiday (Father) were married in Utah in 1996. Four children, all boys, were born of the marriage. Early in the marriage, Mother worked while Father completed school. After the first child was born in 1999, Mother quit working to stay at home with him. The other three children were

Representing Appellant: Robert W. Brown and Amanda K. Roberts of Lonabaugh and Riggs, LLP, Sheridan, Wyoming.

Representing Appellee: Wendy Press Sweeny, Worland, Wyoming.

born in 2000, 2004 and 2008. The family moved to Ten Sleep, Wyoming in 2007 after Father began working there. In 2009, Father moved out of the marital home.

[¶4] Shortly after he moved, Father filed a complaint for divorce. He asked the district court to award the parties joint custody of the children. Mother counterclaimed for divorce and sought custody of the children with visitation by Father and an order requiring him to pay child support. Mother also filed a petition for temporary custody of the children, child support and possession of the marital home. After a hearing on Mother's petition, the district court entered an order awarding Mother temporary primary physical custody of the children and temporary possession of the marital home and requiring Father to pay child support. The district court set the matter for trial in April 2010. Prior to trial, in March of 2010, while attending a funeral in Utah, Mother decided not to return to Wyoming with the children but to remain in Utah where she would be closer to her family.

[¶5] In his pretrial memorandum, Father asked the district court to award joint legal custody and primary physical custody to him with liberal visitation by Mother if she returned to Ten Sleep. Alternatively, he asked that he be awarded sole custody of the children with reasonable visitation by Mother. In her pretrial memoranda, Mother renewed her request that primary physical custody be awarded to her. Mother also designated two witnesses who are the focus of the issues raised on appeal: the parties' oldest son, then 11 years old, and Father's sister, Dawn Blanchard. The son's witness designation stated as follows:

> He resides with his mother.... He has, in recent days, expressed a strong desire to speak with the Judge in the case and tell him his feelings as to where he would like to live primarily and the reasons why. If he is allowed to speak with the Judge, [Mother] proposes that it take place in chambers, without either party being present, but only their attorneys being allowed to observe the conversation.

The sister's designation stated she would testify concerning "her observations of the parties' interaction with the children, [Father's] plans to move to Utah if [Mother] were to move there with the minor children, and other matters pertaining to the issue of custody."

[¶6] On the morning of trial, Mother's counsel reiterated that the oldest son desired to speak with the judge. He proposed the interview be conducted in the judge's chambers outside the presence of the parties with their attorneys present to hear what the boy said but not to ask questions or comment. Citing *KES*, 2005 WY 29, 107 P.3d 779, Father's counsel responded that she had concerns about the son speaking with the judge and suggested the matter be discussed in chambers. The district court stated it could not interview the child unless the parties agreed but left the matter for further discussion during the first break in the trial.

[¶7] The parties state that an unreported discussion did in fact take place during the break. Mother asserts the district court decided during the discussion that it would not interview the child. Father states the parties reached no agreement during the break to allow the court to interview the child, leaving Mother with the burden of coming up with an alternative method for presenting the child's preference. In any event, the trial continued after the break, and the transcript contains no further reference to the son speaking with the judge.

[¶8] Mother called Ms. Blanchard to testify during presentation of her case. Upon questioning by Mother's counsel, the following exchange occurred:

> Q. Okay. As you may know there's an issue or contest who should be the primary physical custodian of these children, in other words with whom should the children live primarily. And I would ask you in your opinion who is the more appropriate person to have the primary physical custody of these children?
>
> [Father's counsel]: Your honor, I'm going to object to this witness testifying as to what is in the purview of the Court. Number one, she's not an expert witness, two, there's no foundation for her testimony so we—and she only sees them twice a year,

we would object to her testifying as to that conclusion.

\* \* \* \*

[Mother's counsel]: Your Honor, I'm not offering her as an expert in child custody matters, someone who has seen the children a total of 20 to 30 times, the children with their mother 20 to 30 times, I'm merely asking who she thinks is the more appropriate person, her lay opinion is all I'm trying to elicit.

THE COURT: I'm going to sustain the objection as the ultimate decision of this Court.

On further questioning, Ms. Blanchard testified that she had witnessed both Mother and Father be wonderful parents to the children and had never witnessed Mother do anything that would be reason to take them away from her. On cross-examination, she testified she likewise has never seen Father do anything that would justify him losing his children.

[¶ 9] After the trial, the district court issued a decision letter in which it concluded Father should have primary custody of the children. The court entered a judgment and decree of divorce awarding him custody and ordering Mother to pay child support. Mother timely appealed from the judgment and decree.

**STANDARD OF REVIEW**

[¶ 10] We review district court determinations involving child interviews in custody proceedings for abuse of discretion. *KES*, ¶ 22, 107 P.3d at 786. We likewise review district court rulings on the admissibility of evidence for abuse of discretion. *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC*, 2010 WY 82 ¶ 10, 239 P.3d 382, 386 (Wyo.2010). The ultimate question in determining whether an abuse of discretion has occurred is whether the district court reasonably could have concluded as it did. *Id.*

**DISCUSSION**

*1. Child Interview*

[¶ 11] Mother asserts the district court incorrectly interpreted *KES* as prohib-iting it from interviewing the child once Father objected. Father asserts that once he objected to the interview Mother had the burden of suggesting alternative procedures for presenting the child's preference. He contends she failed to meet that burden and simply failed to follow through with putting the child's preference before the district court.

[¶ 12] This Court has long held that a district court judge may interview a child to determine his or her preference for living with one or the other parent, provided that the child is of sufficient age to understand the effect of expressing a preference. *Douglas v. Sheffner*, 79 Wyo. 172, 331 P.2d 840, 844 (1958), *superseded by statute as recognized in In Interest of MKM*, 792 P.2d 1369 (Wyo.1990). *See also, Tytler v. Tytler*, 15 Wyo. 319, 338, 89 P. 1, 6 (Wyo.1907). When a district court interviews a child, its decision should state the preference the child expressed and the extent to which it took the child's preference into consideration in arriving at a custody determination. *Douglas*, 331 P.2d at 845. District courts should receive young children's statements with caution, keeping in mind that they may be easily influenced. *Id.* A child's expression of a preference is not conclusive. *Id.* at 844. Rather, a child's wishes are only one factor to be considered in determining custody. *Curless v. Curless*, 708 P.2d 426, 429 (Wyo. 1985). However, consideration of a child's wishes aids the district court in making a custodial determination which is in the child's best interests. *Love v. Love*, 851 P.2d 1283, 1290 (Wyo.1993), quoting *Yates v. Yates*, 702 P.2d 1252, 1255 (Wyo.1985). A child's welfare is not served if his or her wishes are not considered by the district court. *Love*, 851 P.2d at 1291. Though the child's preference is but one factor to consider, his or her preference should receive "serious consideration." *Id.*

[¶ 13] In cases like the present one where one parent objects to an interview, we have recognized due process implications if an interview is conducted without fashioning procedures to protect the parents' rights to be apprised of all of the evidence upon which the custody determination is based and have

an opportunity to challenge or explain the child's statements. *KES*, ¶ 16, 107 P.3d at 784. In *KES*, over the mother's objection, the district court conducted a private interview with a child. On appeal, mother claimed the district court abused its discretion in conducting the interview. We noted the procedure in place then, which allowed private interviews between a judge and a child in a custody proceedings but required the decision letter to reflect the child's preference and the weight it was given, did not protect the parents' due process rights. We said:

> Under the current procedure, parents have no way of knowing the contents of the interview or of challenging the manner in which the interview was conducted or the reliability of the information revealed therein.
>
> In order to ameliorate this problem, we hold that if one or both parents object to a private interview between the child and judge in a custody proceeding, no such interview should take place. Rather, the parties or the district court should fashion a suitable alternate procedure for obtaining evidence of the child's custody preference. In some instances, in-court testimony may be appropriate. An interview with the child in chambers, either with counsel present or recorded in some fashion, may also suffice. Additionally, a neutral third party may be appointed with the consent of the parties to speak with the child and to report to the court or to the parties.

*Id.*, ¶¶ 19–20, 107 P.3d at 785. We expressly stated the examples of procedures we provided in *KES* were not intended to be exhaustive. To the contrary:

> Because each custody case involves unique parties and circumstances, the parties or the district court may fashion any procedure that effectively protects the parents' due process rights and minimizes the stress and trauma to the child. In doing so, the balance must weigh in favor of the child's best interests. Consequently, *if the parties do not consent to a reasonable method of obtaining evidence of the child's preference, the court may conduct an interview in chambers, with counsel present,*

> *and with attention paid to the method most likely to preserve the parents' right to due process under the circumstances.*

*Id.*, ¶ 20, 107 P.3d at 785 (emphasis added). We held the district court abused its discretion when it conducted a private interview with the child despite the mother's objection, reversed the custody determination and remanded for further proceedings.

■ [¶ 14] As the above discussion makes clear, we did not hold in *KES* that no interview may occur unless both parents agree. Rather, we held that when a parent does not consent, the parties or the court should fashion a procedure that protects the parents' rights while minimizing the stress and trauma to the child with the balance weighing in favor of the child's best interests. *Id.* In the event the parents are not able to agree on a reasonable method of obtaining evidence of the child's preference, the district court may conduct an in-chamber interview with counsel present and with attention to protecting the parents' due process rights. *Id.*

[¶ 15] In the present case, the result of Father's objection was that the district court did not consider the son's preference. That is contrary to the rule in Wyoming that the child's expression of a preference must be considered. The appropriate course of action upon Father's objection was for the parties or the district court to come up with a suitable procedure for obtaining the evidence of his preference. Mother suggested an in-chambers interview with counsel present. If Father objected to her suggestion and the parties were unable to agree on another reasonable method of obtaining the evidence, the district court could have conducted the interview in chambers with counsel, recorded the interview, required the child to testify in court, appointed a neutral third party to speak with the child and report back to the parties and the court, or fashioned another suitable procedure for presenting the evidence. By not fashioning any procedure, not obtaining the evidence and consequently not considering the child's preference, the district court abused its discretion.

### 2. Disallowing Ms. Blanchard's Opinion Testimony

[¶ 16] Mother contends the district court erred in refusing to allow Ms. Blanchard to testify as to her opinion about which parent should have custody of the children. Mother asserts that such lay opinion testimony is permitted under W.R.E. 704 even if it relates to an ultimate issue. She contends the district court erred in excluding the testimony based upon an ultimate issue analysis.

[¶ 17] Father asserts any error in prohibiting the testimony was harmless because Ms. Blanchard ultimately testified that she thought both parents were good parents and had not seen either one of them do anything that would justify taking the children away from them. Father also contends the district court properly disallowed Ms. Blanchard's opinion testimony because she testified that she saw Mother only two to three times per year; therefore, there was insufficient foundation for her to express an opinion. Given her limited involvement with Mother, Father contends, the district court did not abuse its discretion in sustaining the objection to her expressing an opinion about which parent should have custody of the children.

[¶ 18] W.R.E. 704 provides:

**Rule 704. Opinion on ultimate issue.**

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

This Court has recognized that Rule 704 is designed to permit opinion evidence on an ultimate issue. *Stephens v. State,* 774 P.2d 60, 66 (Wyo.1989), *overruled on other grounds by Large v. State,* 2008 WY 22, ¶ 30, 177 P.3d 807, 816 (Wyo.2008). We have said that Rule 704 in effect abolishes the "ultimate issue" objection. *Stephens,* 774 P.2d at 66, citing *Reed v. Hunter,* 663 P.2d 513 (Wyo. 1983). We also have said:

It was the intent of the framers of the Rules of Evidence to considerably relax the prohibition against receipt of opinion testimony both by expert and lay witnesses. Generally, the rules should be liberally construed to allow the admission of such evidence. Yet, on occasion, we recognize that certain opinion evidence may not be helpful or may have a potential for such mischief that it ought to be rejected.

*McCabe v. R.A. Manning Construction Company,* 674 P.2d 699, 705 (Wyo.1983).

[¶ 19] We have not previously addressed ultimate issue opinion testimony in the context of a custody determination. In *Reed,* homeowners brought an action against an insurance company for breach of contract or negligence in denying coverage after their home burned. At trial, the homeowners presented an expert witness who testified that in his opinion the insurance company "blew it" with respect to their insurance coverage. On appeal, this Court found no error in the district court's decision to allow the witness to state his opinion concerning the ultimate issue. *Reed,* 663 P.2d at 518.

[¶ 20] In *McCabe,* a contractor sued a property owner for the balance allegedly due on an oral construction contract. One of the primary issues in the case was whether the parties abandoned the original cost-plus agreement and entered into a new fixed price contract. The property owner sought to introduce evidence that an architect he had employed on the project and who was present at the meeting when the parties allegedly discussed the new agreement was of the opinion that the parties abandoned the original agreement and entered into a new one. *McCabe,* 674 P.2d at 704. The district court did not allow the opinion testimony. This Court held the district court did not abuse its discretion in precluding the testimony. Among the factors we considered in reaching that result were: the architect was employed by the property owner, helped in the preparation of his case and may have been biased in his favor; the issue of whether the parties made a new agreement was hotly contested; and the testimony of the parties as to what transpired at their meeting, what was said and what occurred, was clear and understandable and more than sufficient for the jury to reach its determination. *Id.* at 705–06.

[¶ 21] In the present case, the district court sustained the objection to the witness expressing her opinion as to who the

more appropriate parent was to have primary custody of the child, stating that was a determination ultimately for the court to make. While an ultimate issue objection is not an appropriate ground for excluding opinion testimony in light of Rule 704, the decision whether to admit or exclude evidence is within the district court's discretion. WRE 701 allows a lay witness to testify in the form of an opinion if the opinion is: 1) rationally based on the perception of the witness and 2) helpful to understanding the witness's testimony or determining a fact in issue. We conclude from the record before us the district court could have exercised its discretion to exclude the testimony on one of these grounds. Although the district court phrased its ruling in terms of the ultimate issue, it seems just as likely it concluded Ms. Blanchard's opinion would not be helpful.

[¶ 22] We also are not persuaded Mother was prejudiced by the exclusion of Ms. Blanchard's opinion testimony. Had the district court allowed her to testify which parent she thought should have custody of the children, it seems unlikely the result would have been different. Although the district court did not hear her opinion, it likely surmised what her opinion was from the fact that she was Mother's witness and Mother sought to present the opinion testimony. Under these circumstances, any error in excluding the testimony was harmless.

## CONCLUSION

[¶ 23] The district court abused its discretion in not considering the oldest child's preference for living with one parent over the other parent. Any error in the exclusion of the sister's opinion testimony was harmless. The custody order is reversed and the case is remanded for the parties or, if they remain unable to agree, the district court to fashion a method for presenting evidence of the oldest son's preference. In the event the parties are unable to agree on an appropriate method, the district court may interview the child in the presence of the parties' attorneys, conduct a recorded interview or fashion another procedure protecting the parties' due process rights. The parties shall then have

the opportunity to challenge, rebut or explain the evidence.

[¶ 24] Reversed and remanded for proceedings in accordance with this opinion.