# IN THE SUPREME COURT, STATE OF WYOMING

# 2015 WY 53

APRIL TERM, A.D. 2015

April 6, 2015

ELLEN WALTER,

Appellant
(Defendant),

v.                                                             S-14-0188

MARK WAYNE WALTER,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*

Tad T. Daly and Matthew R. Sorenson, Daly, Davidson & Sorenson, LLC, Gillette, Wyoming.

*Representing Appellee:*

Jill D. LaRance, LaRance & Syth, PC, Billings, Montana.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Chief Justice.**

[¶1]    In this appeal from a Decree of Divorce, Ellen Walter ("Mother") challenges the district court's decisions on child custody and child support, its rulings relating to the guardian ad litem, and a modification to the original findings of fact and conclusions of law. Finding no reversible error, we will affirm.

## ISSUES

[¶2]    Mother presents four issues for our review, which we have reordered to facilitate discussion:

> 1.    Did the district court abuse its discretion in awarding primary physical custody to Father?
>
> 2.    Did the district court abuse its discretion in requiring the parties to split the children's medical costs not covered by health insurance?
>
> 3.    Did the district court err in permitting the guardian ad litem to withdraw?
>
> 4.    Did the district court abuse its discretion by modifying its original Findings of Fact and Conclusions of Law?

## FACTS

[¶3]    Mother and Father were married in 2004. Three children were born to the couple, JRW in 2004, JMW in 2010, and LCW in 2011. Father filed a complaint for judicial separation on August 21, 2012, and later amended his complaint to seek a divorce.

[¶4]    The parties stipulated to an order for temporary arrangements for the children. The district court entered the temporary order giving Mother primary physical custody of the children, with liberal visitation to Father. It ordered Father to pay child support and spousal support. A guardian ad litem was appointed for the children. A few months later, but before the trial, the district court allowed the guardian ad litem to withdraw.

[¶5]    Trial began on March 12, 2014. Evidence indicated that Father was employed as a psychiatrist during the marriage. Mother did not work outside the home, and was the primary caregiver for the children. All three children have special needs. JRW is a high-functioning autistic child also diagnosed with high anxiety and ADHD. JMW was developmentally delayed in his motor skills as an infant, though he largely caught up as a toddler. He still has delayed speech development and orthopedic problems, and recently

1

started to exhibit some indications of autism or ADHD. LCW suffers from an undiagnosed developmental disorder, and has significant developmental delays. All three children have participated in various medical, therapy, and counseling programs.

[¶6] Following a three day trial, the district court issued Findings of Fact and Conclusions of Law. It concluded that the best interests of the children would be served by granting primary custody to Father and liberal visitation to Mother. Mother was ordered to pay child support. Prior to entry of the decree, Mother filed a motion asking the district court to modify its findings and conclusions by reducing the amount of child support she was to pay. Mother asserted that, under the proposed findings, she would have the children for more than 40% of the year so child support should be calculated as set forth in Wyo. Stat. Ann. § 20-2-304(c) (LexisNexis 2013).[1] The district court declined to adopt Mother's proposed change and instead reduced Mother's visitation below the 40% statutory threshold. The Decree of Divorce entered by the district court reflected this modification, but was otherwise consistent with the original findings and conclusions. Mother filed this timely appeal.

## STANDARD OF REVIEW

[¶7] Our standard of review in domestic relations matters is well established:

> Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. . . . A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther*, 888 P.2d 1250, 1252 (Wyo. 1995) (quoting *Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo. 1993)).

---

[1] That statute provides an alternative formula for calculating child support when both parents have custody more than 40% of the time:

> When each parent keeps the children overnight for more than forty percent (40%) of the year and both parents contribute substantially to the expenses of the children in addition to the payment of child support, a joint presumptive support obligation shall be determined by use of the tables. After the joint presumptive child support obligation is derived from column three of the tables, that amount shall be divided between the parents in proportion to the net income of each. The proportionate share of the total obligation of each parent shall then be multiplied by the percentage of time the children spend with the other parent to determine the theoretical support obligation owed to the other parent. The parent owing the greater amount of child support shall pay the difference between the two (2) amounts as the net child support obligation.

2

*Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo. 1998).

## *DISCUSSION*

### 1. *Primary Physical Custody*

[¶8]    Mother contends that the district court abused its discretion in awarding primary physical custody to Father.  Wyo. Stat. Ann. § 20-2-201(a) provides a list of ten factors the district court must consider in determining custody.  The district court considered all of the ten factors, but Mother contends that it placed unnecessary weight on certain factors and ignored others.  The primary error, Mother asserts, is that the district court placed insufficient weight on the fact that Mother had been the children's primary caregiver.

[¶9]    Mother contends that her role as primary caregiver should have been given particular emphasis because of the children's special needs.  Mother points out that she was the one primarily responsible for obtaining medical care and providing in-home therapies to the children.  She asserts that Father's full-time work schedule will preclude him from providing those therapies or performing many of the activities necessary to the children's well-being and development.

[¶10]  In its findings and conclusions, the district court provided an eight-page discussion of the ten required statutory factors.  It acknowledged that all three children have special needs.  It recognized that Mother has been the primary caregiver, and that she was closely involved in their medical care and therapies.  It also recognized that Father would need to enroll the children in daycare if he had primary physical custody.  It concluded its explanation as follows:

> The Court also gave great consideration to the fact that Mother has been the primary caregiver for the children since birth.  The Court generally awards primary physical custody to the parent who has taken on this role throughout the children's lives.  However, in light of Mother's history of mental instability, lack of credibility, inability to communicate with Father, refusal to foster a positive relationship between Father and the children, and her inability to respect Father's rights and responsibilities the Court cannot award primary physical custody to Mother.  This decision was made based on the evidence that was introduced at trial, and was not made lightly.  Throughout the separation, Father has shown that he is the more stable parent, and he is capable of providing a safe environment for the children.

On this basis, the district court concluded that it was in the best interests of the children for Father to have primary physical custody.

[¶11]   Mother's claim that the district court ignored her role as primary caregiver or failed to give it appropriate weight is demonstrably incorrect.  Moreover, her assertion that the district court gave this factor insufficient weight is an invitation for us to reweigh the evidence.  "This Court, however, does not reweigh evidence." *Hayzlett v. Hayzlett*, 2007 WY 147, ¶ 8, 167 P.3d 639, 642 (Wyo. 2007) (citing *Hall v. Hall*, 2005 WY 166, ¶ 15, 125 P.3d 284, 289 (Wyo. 2005)).  An abuse of discretion occurs when a material factor deserving significant weight is ignored. *Buttle v. Buttle*, 2008 WY 135, ¶ 15, 196 P.3d 174, 178 (Wyo. 2008).  The district court did not give Mother's role as primary caregiver the weight Mother would like, but it did not ignore that factor.

[¶12]   Mother also contends that the district court gave insufficient weight to evidence of spousal and child abuse by Father.  However, the record shows that the district court did consider this factor.  Its findings and conclusions include this explanation:

> At trial Mother alleged that Father had physically abused both her and the children, particularly [JRW].  The Court must consider evidence of spousal abuse or child abuse as being contrary to the interests of the children.  [Wyo. Stat. Ann.] § 20-2-201(c).  However, during the marriage Mother never reported the alleged incidents of domestic violence to anyone, even her own psychiatrist. . . .  Mother also admitted that she exaggerated several of the incidents that she used to support her application for the *Protection Order*.  As mentioned above, Mother's credibility was impeached on several occasions, and the Court cannot find that her accusations of spousal abuse are credible.
>
> The Court also considered her allegations of child abuse.  Once again, these alleged incidents were never officially reported to the police or the Department of Family Services ("DFS"). . . .  In addition, Father's counsel pointed out that each alleged incidence of abuse corresponded to an event that happened in the litigation (i.e. Father asking for a custody evaluation).  The Court notes that the children have seen several doctors, therapists, counselors, teachers, etc. who are trained to notice child abuse, and not one of these individuals has ever reported suspected abuse at the hands of either parent.

Father testified that Mother's allegations of abuse "have no merit."  We have often said

that the credibility of witnesses is for determination by the trial court. *E.g.*, *Hench v. Robinson*, 75 Wyo. 1, 12, 291 P.2d 417, 421 (Wyo. 1955). In light of Father's denial, and the district court's findings regarding Mother's credibility, it was reasonable for the district court to give the allegations of abuse less weight than Mother would like. Mother has not demonstrated an abuse of discretion in granting primary physical custody to Father.

## 2. *Splitting of Medical Costs*

[¶13] The district court ordered that Father should continue to provide health insurance for the children, and that "[a]ny uncovered medical expenses should be divided equally between the parties." Citing the disparity in their incomes, Mother asserts that Father makes a minimum of ten times more than she does. Mother contends that the district court abused its discretion by ordering an equal split of medical expenses not paid by insurance.

[¶14] The record demonstrates that the district court had a reasonable basis for its decision. Both Father and Mother testified about the special needs of the children, but they disagreed about the amount of medical care, therapy, and other services the children needed. For example, Father testified to a "prominent disagreement" with Mother about JRW's speech therapy. He believed that the school was providing adequate therapy, while Mother wanted JRW to continue receiving additional therapy from a private source. Father also disagreed with Mother over whether JMW needed continuing physical therapy. He expressed his concern that the children had been subjected to "overtreatment and redundant therapies," and his belief that overemphasizing their disabilities kept them "too much in the sick role." He testified that an even split of uncovered medical expenses would help discourage Mother from seeking a level of services that Father believed was unnecessary and possibly harmful.

[¶15] The district court apparently found Father's testimony credible, and accepted an equal split of uncovered medical expenses. This decision did not exceed the bounds of reason under the circumstances. It was not an abuse of discretion.

## 3. *Withdrawal of Guardian Ad Litem*

[¶16] Several months after the divorce proceedings were initiated, Father filed a motion for the appointment of a guardian ad litem to represent the best interests of the children. The district court granted that motion, indicating that Mother had stipulated to the order. Nine months later, the guardian ad litem filed a motion to withdraw, and the district court granted the motion. Mother claims that the district court abused its discretion when it permitted the guardian ad litem to withdraw without participating fully in the remainder of the proceedings.

[¶17]   The record reflects that Mother agreed to the guardian ad litem's withdrawal.  The guardian ad litem's motion stated that she had consulted with counsel for Mother and Father, "and they have both given their consent to Counsel's withdrawal as Guardian *Ad Litem* in this matter."   Mother never asserted in the district court that the guardian ad litem should not be allowed to withdraw, and "we generally decline to review issues raised for the first time on appeal." *Kordus v. Montes*, 2014 WY 146, ¶ 10, 337 P.3d 1138, 1141 (Wyo. 2014) (citing *In re Lankford*, 2013 WY 65, ¶ 28, 301 P.3d 1092, 1101 (Wyo. 2013) and *Jones v. State*, 2006 WY 40, ¶ 7, 132 P.3d 162, 164 (Wyo. 2006).

[¶18]   Mother recognizes this rule, but relies on *Rowan v. Rowan*, 786 P.2d 886, 889 (Wyo. 1990) to claim that our "usual rule" is that an "issue raised for the first time on appeal will not be considered by this court absent special circumstances."   She claims that special circumstances exist in this case.   She analogizes this case to *Clark v. Alexander*, 953 P.2d 145 (Wyo. 1998), in which we reviewed the admissibility of the guardian ad litem's testimony, even though neither party had objected to the evidence being admitted by the district court.

[¶19]   The special circumstances in *Clark* were that the "'definition of the precise roles of the attorney and the guardian ad litem for children is still evolving and not without difficulty.'"   *Id*. at 151 (quoting *S.S. v. D.M.*, 597 A.2d 870, 877 (D.C. 1991)).   We noted that, in Wyoming, the role of an attorney or guardian ad litem in custody cases is not addressed by statute, and that our case law had not clearly delineated the duties of a guardian ad litem.   "Given the lack of clear direction provided to those who must fulfill this role in Wyoming, and our certainty that the issues in this case will reappear in the future," we chose to address those matters in our opinion. *Clark*, 953 P.2d at 151.   Those special circumstances are not present in Mother's case.   She presents, and we find, no other circumstances justifying our consideration of an issue raised for the first time on appeal.

*4.  Modification of Findings of Fact and Conclusions of Law*

[¶20]   Following the trial, the district court issued detailed and comprehensive Findings of Fact and Conclusions of Law.   It concluded that Father should have primary physical custody of the children.   Mother was to have liberal visitation, including from Wednesday afternoon until Monday morning on alternating weeks during the school year, nine weeks during the summer, and alternating holidays.   The district court ordered Mother to pay child support in the presumptive amount calculated pursuant to Wyo. Stat. Ann. § 20-2-304(a).

[¶21] Mother filed a motion asking the district court to modify child support.   She claimed that the visitation schedule authorized her to keep the children overnight 43% of the year, and urged the district court to recalculate child support using the alternative formula set forth in Wyo. Stat. Ann. § 20-2-304(c).   Under the alternative child support

6

formula, Father would pay child support to Mother.

[¶22] The district court modified the findings and conclusions, but not in the way Mother sought. As it explained, "Rather than adopt changes in the child support calculations as proposed by [Mother], the Court finds that modifying the visitation schedule such that a shared custody arrangement is avoided is in the best interests of the children." The original findings and conclusions provided that Mother would have the children on alternating weekends during the school year from **Wednesday** afternoon until Monday morning. The district court modified that to a period from **Friday** afternoon until Monday morning.

[¶23] The district court explained its authority to make the modification this way:

> Procedurally, the Court finds that its *Findings of Fact and Conclusions of Law* was not intended to be a final order. Thus, the Court is able to modify such in its discretion prior to entering a final order irrespective of certain timing or other limitations set forth under Rules 59 and 60. *Broadhead v. Broadhead*, 737 P.2d 731 (Wyo. 1987).

In *Broadhead*, a divorce case, the district court issued two decision letters, but thereafter "entered the divorce decree substantially different from provisions of the decision letters." *Id.* at 732. We said that the decision letters were not intended as final orders, and the district court had discretion to modify its tentative decisions before a final order was entered. We concluded that the district court did not err in issuing a divorce decree that differed from the earlier decision letters. *Id.* at 733.

[¶24] Similarly, in Mother's case, the district court's findings and conclusions were not meant as a final order. They directed Father to prepare and circulate a proposed divorce decree. Applying the ruling from *Broadhead*, the district court had discretion to modify the findings and conclusions before entering a final order. However, Mother seeks to distinguish her case from *Broadhead* on several bases.

[¶25] First, she points out that *Broadhead* involved only property division, while her case involves child custody and child support. She asserts that Wyo. Stat. Ann. § 20-2-201 requires a district court to consider a list of ten factors when making child custody decisions, a requirement that did not apply in *Broadhead*. She contends that the district court erred because it did not address how those ten factors affected the decision to modify the original findings and conclusions.

[¶26] Contrary to Mother's claim, a district court's discretion to modify non-final orders does not depend on the issue being decided. We have recognized this discretion in cases involving, for example, the appointment of a guardian, *In re Lankford*, ¶ 26, 301 P.3d at

7

1100, and in a case described only as "civil litigation," *Steranko v. Dunks*, 2009 WY 9, ¶¶ 2, 6, 199 P.3d 1096, 1096-97 (Wyo. 2009). We have previously recognized it in a case dealing with child custody, *Parris v. Parris*, 2009 WY 44, ¶ 17, 204 P.3d 298, 303 (Wyo. 2009), and in another dealing with child support, *Lee v. Lee*, 2013 WY 76, ¶ 10, 303 P.3d 1128, 1132 (Wyo. 2013).

[¶27] As to the ten statutorily required factors, the district court's findings and conclusions contained a thorough and thoughtful discussion of each of the ten factors and how they influenced the district court's decision. That discussion is also incorporated into the divorce decree, the district court's final decision on child custody. The district court did not overlook the ten factors, and Mother has presented no authority indicating that the district court was required to repeat this lengthy discussion a third time in its order modifying the findings and conclusions.

[¶28] In its original findings and conclusions, the district court concluded that Father should have primary physical custody. It explicitly concluded that, for several reasons, "a shared custody arrangement is not appropriate." It then adopted the visitation schedule proposed by Father. Mother's motion for modification indicated that she considered this visitation schedule to be a shared custody arrangement, or at least coming close to that. Noting that shared custody is disfavored in Wyoming, the district court adjusted the details of the visitation schedule to be more consistent with its basic conclusion that Father would have primary physical custody. Under the circumstances, we cannot conclude the district court abused its discretion.

[¶29] The second distinction Mother proposes is that the district court in *Broadhead* invited the parties to comment and request alternative relief, and held a hearing to consider further evidence before modifying its decision. The district court did not hold a hearing, and Mother asserts that the decision "came as a complete and utter surprise." Relying on *In re MEO*, 2006 WY 87, ¶ 38, 138 P.3d 1145, 1156 (Wyo. 2006), she further contends that the right to familial association is fundamental and constitutionally protected, and when addressing such a right, courts "must accommodate to the keenest spirit of procedural due process." She claims that the district court was required to hold a hearing and take new evidence, if offered, in order to avoid infringing on her due process rights.

[¶30] In support of her position, Mother relies on *KES v. CAT*, 2005 WY 29, 107 P.3d 779 (Wyo. 2005). In that case, we recognized that a parent's right to associate with his or her child is a constitutionally protected liberty interest, and in custody litigation, that interest entitles the parent to procedures that satisfy the requirements of due process. *Id*., ¶ 16, 107 P.3d at 783-84. Over the objection of one of the parents, the district court interviewed the child in private to learn if the child preferred to live with one parent or the other. We ruled that, "When a judge interviews a child in private without the consent of a parent, that parent is deprived of due process inasmuch as he or she is unable to hear

the evidence, and is not given an opportunity to explain or rebut statements made by the child." *Id*., ¶ 16, 107 P.3d at 784. Mother also relies on *BDR v. BEB*, 888 P.2d 216, 219 (Wyo. 1995), in which the district court terminated the biological father's parental rights and granted another couple's adoption of the child after holding a "truncated hearing" in which the biological father "was not allowed to present evidence" relevant to all of the issues. We concluded that these procedures were inadequate to protect the biological father's due process rights.

[¶31] Mother's situation is different. In making its decision to modify its findings and conclusions, the district court did not take any evidence outside of the parties' presence. It relied on the extensive evidence previously presented in the three day trial. Mother participated in the trial, with the opportunity to hear, explain, and rebut all of the evidence. The proceedings were not truncated, and Mother was not prevented from presenting relevant evidence. Mother fails to indicate what additional evidence could have been provided, and does not demonstrate how a hearing might have changed the district court's decision.

[¶32] In her final argument concerning the district court's modification of the findings and conclusions, Mother claims that the district court abused its discretion by ignoring a factor significant to the decision. At trial, the therapist for JRW testified that children with autistic disorder, including JRW, have difficulty with transitions. She recommended that the children should spend significant blocks of time with each parent, with fewer exchanges of custody. Father agreed that JRW has "transition issues." Mother contends that the district court's original findings and conclusions were consistent with this evidence because they allowed her visitation with the children from Wednesday afternoon to Monday morning on alternating weeks. She claims that the modification overlooked the difficulty of transitions for JRW and thereby ignored the best interests of the children.

[¶33] However, the modified schedule involves exactly the same number of transitions as the schedule set out in the original findings and conclusions. The transitions take place on Friday rather than Wednesday, as in the original findings and conclusions, but the number of transitions is the same. Accordingly, the two schedules are equally consistent with the parties' request to accommodate JRW's transition issues by requiring relatively few transitions. The district court did not ignore the evidence regarding JRW's difficulties with transitions, and it did not abuse its discretion in modifying the original visitation schedule.

## *CONCLUSION*

[¶34] We have considered each of Mother's issues, and find no abuse of discretion or other reversible error in the district court's decision. We affirm.

9